Please be seated. Would the clerk call the next case, please? Case number 337-31, First Merit Bank, Abilene v. Amy DeLeo v. Margaret McEnery, Appellant by William Wigoda. Mr. Wigoda, good morning. Good morning, Your Honors. Counsel, may it please the Court, my name is William Wigoda and I represent Margaret McEnery. In her essentially dissolution of marriage proceedings, the dissolution of marriage proceedings were consolidated with a number of other cases. And what we are trying to do today in the reason for the appeal, the reason for proceeding in a lower court, is trying to protect Margaret McEnery's interest in what is left of her marital estate. During the course of the proceedings, we brought a number of motions to consolidate. Most of those motions to consolidate were granted. This is why the First Merit case v. William McEnery is part of the dissolution of marriage proceedings. All of the law cases were consolidated into the dissolution of marriage proceedings. Also during that time, Margaret McEnery brought three motions for summary determination under 1005D. One of those motions for summary determination is the subject matter before the Court today. Prior to, and we admit this, prior to the institution of the dissolution of marriage proceedings, First Merit Bank filed proceedings against William McEnery. William McEnery, during those proceedings, granted judgments as to various other entities, including First Merit Bank. This was without any knowledge or consent of his wife, Margaret McEnery. I would point out that the dissolution of marriage proceedings are still pending and not currently set for trial. During the dissolution of marriage proceedings, bankruptcy proceedings were instituted against William McEnery. First, he was put into involuntary bankruptcy, and then that was his trust, which contained most of the marital assets. And then, ultimately, he filed a voluntary proceeding, both in terms of his trust and himself. I mention this, and it's important, because I had to go before Senator Judge Weedoff in the bankruptcy court to ask that a certain portion of the automatic state be lifted. And Judge Weedoff ultimately granted our motion, but he was very specific. He allowed us to proceed on what interest Margaret McEnery had in certain property and the nature and extent of that interest. In fact, it was alleged that I violated that stay, and Judge Weedoff brought me before court and said, Mr. Weedoff, what exactly do you not understand about my order? And I told him that I understood it and apologized if I violated the order. Again, that's important, because it's going to address some of the issues raised in the Applebee's brief. Ultimately, Margaret McEnery was successful on one of her motions for summary determination, and Judge Barrett, in the disillusioned marriage proceeding, said that Margaret McEnery had an interest in certain property. And that interest was at least 50%. He would not say what percentage, but it was at least 50% based upon the norms of the Lawyers and Disillusioned Marriage Act. And the parties in that proceeding where that order was entered were the husband and wife, right? First Merit Bank was involved in that proceeding and, in fact, objected to and filed papers in opposition to that motion for summary determination. Wouldn't that order be vis-a-vis the marriage? I'm sorry, do you know that? Wasn't that order vis-a-vis the marriage? Yes, it was. Between the two parties, she had a 50%, between the husband and wife. That is correct. That is correct. The order didn't cut off First Merit's, any security interest they had or property rights they had in the property, did it? The order did not address that. There was no address on if First Merit was outsider, insider, anything, right? It was not addressed at all. The order specifically said that Margaret had an interest in certain property, and those properties were enumerated. There were quite a number of them, the most significant of which was some interest in seven restaurant, the New Liability Corporation. And that was pursuant to the Dissolution Act? Yes, sir. We brought the motion, to be specific, Your Honor, we brought the motion for summary determination based upon Section 503 of the Only Marriages What was the point of doing that? It's an excellent question, probably not addressed appropriately in the briefs, but without going into too much history, this family was very well to do at one time. It was probably worth, in its public record, in excess of $250 million, and just within a few years, it was, as we say, a reversal of fortunes. When the bankruptcy petition was filed, it was estimated that the debt was close to $250 million, without any equity. In fact, the schedules for the bankruptcy proceedings were about 180 pages long. What we were trying to do, what I was trying to do in my firm on behalf of Margaret McHenry, and Margaret McHenry was trying to salvage some property for her. Here's a woman who basically, she did work in one of the family businesses, but close to 60 years old, did not really have any life skills. We were trying to salvage some property for her to live on. Some of these properties that were not taken in bankruptcy were the restaurant limited liability corporations. The family owned like 48 gas stations, port-a-potty companies, limousine companies, and so on and so forth, almost all of which were taken in bankruptcy. What we were trying to do is get the trial court to award her certain property, at least a percentage of it, that we could take to the bankruptcy court. The bankruptcy court would say, okay, Mr. McHenry, he's the one who filed bankruptcy. He has 50%. You have not filed bankruptcy. You have the other 50%.  We were successful on a couple of issues. For example, there was a tax refund of about $450,000, and the court granted Margaret McHenry summary judgment. It was the first summary judgment we filed. in that amount and awarded her 50%, her husband 50%. The bankruptcy trustee took Mr. McHenry's 50%, but Mrs. McHenry was allowed to keep her 50% of the refund. So we were trying to do the exact same thing with other properties. There's a big difference between a tax refund and the contractual rights of first merit, security rights of first merit in certain properties. I guess your argument is there's not. I don't think so, because first merit, under their philosophy, would have had an interest in a tax refund. Well, nobody had an interest in a tax refund except Mr. and Mrs. McHenry, right? That's kind of a trick question, Your Honor, but I will answer it as truthfully as possible. No, based upon the judgment that Mr. McHenry agreed to in the case of first merit versus McHenry, first merit could have asserted an interest in a tax refund. Well, okay, they can claim I've got a judgment against you. I want that. And by the way, was the confession of judgment contained in the promissory note? In other words, some of these promissory notes have confessions of judgment built into them. Does that one exist in here? I don't know, sir. I never was, to be perfectly candid with you, Your Honor, I never looked at the underlying notes. Let me ask, did I hear you right at the beginning? I was trying to figure this out from the briefs. Did you say that first merit's action against Mr. McHenry is still proceeding or did this turnover order end at all? No, there are still actions proceeding against Mr. McHenry. In this consolidated judgment? Yes, sir. By first merit? Yes, sir. In fact, we've been continuing the case from time to time. So what exactly is this order that we're here about today? What claim did it put an end to? You're talking about the, well, there were two orders. There's the September 12th order. Okay, but what you're appealing is the turnover order. That's correct. Okay. That turnover order ends what part of the litigation? It would end the part of the litigation relating to the restaurant LLCs and some other pieces of personal property. Okay, so as far as I understand it, in the first merit claim against Mr. McHenry, those are separate claims as opposed to whatever else? Yes. What's still going on from here? It's pretty difficult to find out in this case what's still going on down in the circuit court. Lots. In fact, first merit currently has pending citations against my client that have been continued from time to time, citations to discovery assets, and they have another turnover order on some other items of personal property, which has been continued from time to time. But simplistically, what we're dealing with is just the enumerated items in this one turnover order. Yes, sir. That's it? Yes, sir. Nothing more, nothing less? It's the order, the turnover order as it relates to the September 12th order granting Margaret McHenry an interest in those specific parcels of property, which include the restaurant LLCs, some toy trains, and I say toy trains tongue-in-cheek because they're big toy trains worth hundreds of thousands of dollars, and some other personal property, which is worth a lot of money. And I don't want to be glib about it, but the other personal property, for example, the quote toy trains, the engine alone is worth close to a half a million dollars. In other words, those items are enumerated and that's what we're dealing with. They were specifically enumerated in both the September 12th order and generally in the turnover order. Ma'am? I'm sorry. I am confused here because if it's marital property and we're dealing with a marital debt, doesn't that automatically go to satisfy the debt? I mean, doesn't the payment for the debt necessarily come out of the marital property? It may or it may not. Under the Illinois Marriage and Dissolution of Marriage Act, and this is one of the points that I would bring out under the IMDMA, it is the trial court's responsibility to allocate marital property and marital debt. So during the trial, the court could say, Mr. McHenry, you have to pay this. Mrs. McHenry, you don't have to pay this, or some permutations and combinations thereof. So you're correct, it could occur, but not necessarily. See, I have a problem with that statement because I don't understand how you get there from the Marriage and Dissolution Act. The Marriage and Dissolution Act cannot negate or nullify prior security interests in property. For example, in the divorce, in a very simple way, you can have an automobile owned in joint tenancy, and a bank has a security interest in that automobile. In the divorce proceeding, they could say any obligation has to be paid by the husband, but the wife is awarded the car, 100%. And then the guy doesn't pay anything on the debt, and the bank takes the car. Happens all the time. Happens all the time. And it doesn't matter what the divorce decree said, that she was supposed to get it free and clear, and he's supposed to pay the debt. The bank still has their interest. That's correct. So the divorce judgment can't nullify, negate the bank's security interest. That's absolutely correct, but the divorce court can order who has to pay that interest, and we were never given that opportunity in this particular instance. I'm sure if you're willing to pay the bank a million and a half bucks, they'll relinquish their interest in the turnover. Yes, sir. They would. They'd probably do it for a lot less than that. So you can do that. It's just like the car where if you wanted to keep the car, you could go to the bank and they'd come to repossess it and say he was supposed to pay it, but he didn't. So here, I want to keep this car. I'll pay it. That's the way it works, right? That could be the way it works, except for the fact my client doesn't have a million and eight, a million and five. She has very little, if anything. Well, what would happen with your client if it was a car, just as Carter mentioned, and she didn't have the money to pay off the car payment? She would lose the car and file a petition of rule of show cause against her ex-husband. There you go. So why isn't that the way it is here? Because she was already awarded. Judge Bill had already awarded her half of that property but didn't assess any debt to it because that's what takes place at the trial. It's the allocation of the assets and the debts. And we just went in pre-trial on a motion for summary determination and asked for an interest for the court to make a determination prior to trial. So we could possibly sell some of that property. And what judge entered the turnover order? I'm sorry? What judge entered the turnover order? Same judge. This is part of the problem. And that was the last order he entered, right? I mean, with respect to this. Yes, sir. I mean, he entered the order for finance. He had some interest. But then he also entered the turnover order. Correct. And we're saying, my point is, above and beyond all the legalese and the res judicata and the law of the case, I think one of the most significant issues here is that there is a conflict in these two orders. Well, and that goes back to your law of the case and res judicata arguments. You can't be serious. It can't be the law of the case. Every order entered in the trial court is interlocutory virtually until the case is over and there's been time and 30 days has run and there's no motion to reconsider or appeal it. I mean, trial court orders are interlocutory by their nature because a trial judge can always change his mind until he loses jurisdiction and through an appeal or runs out of time. So one order in a trial court in a case that's still progressing cannot become the law of the case because the judge has motions to reconsider or post-trial motions and everything like that. But the First Mayor never brought a motion to reconsider, and under Section 1005D of the United States Code of Civil Procedure, the order that Judge Barrett entered on September 12th granting Margaret McHenry a 50% interest in this property is determinative of those issues unless, and in fact the statute specifically says, you determine these issues and then you go on and try other issues. Well, see here, this goes back to my earlier question that I'm having a lot of trouble with in your argument. Again, taking the very simple case of a car, and the people own the car in joint tenancy, husband and wife, and there's a loan from the bank and the bank has a security interest in the car. They have a lien on the car. So the court in a temporary order says the wife has a 50% interest in the car, just like in this case, or even better. I say she has a 100% interest in the car. Doesn't allocate any debt yet, but that's coming in the future. Now, the payment stopped, and so the bank starts proceeding to take the car. And now the person says, oh wait a minute, it's my car, we're going to resolve the debt later. The bank can still go ahead and take the car, which stopped the bank. That other order doesn't stop the bank. The bank's not prohibited from enforcing its lien. Well, legally, your honor, is correct. Practically, what would occur in, and I've done this before, if the bank filed suit against the parties for nonpayment, I would move to consolidate that into the dissolution of marriage proceedings and ask the court to stop the proceedings. In fact, I did that in this case with a foreclosure action, with Standard Bank. And very often, and it's almost a mandatory consolidation when it comes to real estate. I don't know if it's mandatory or not with regard to an armored vehicle. And the court would often enjoin the collection proceedings to determine who should be paying the debt. So that would be a remedy. In this particular case, we were foreclosing that remedy. Can a court say that a person, the bank, can't collect a debt from, they could say the guy has to pay, and if the guy doesn't pay, and there's a prior contract saying both of them will pay, can the court say, no, we're going to enjoin you from ever asking the wife to pay this debt. Can they do that? Based upon your word, ever, the answer is no. And it would depend on whether or not it's prejudgment or postjudgment. Prejudgment, I think the answer is yes. Postjudgment, I think the answer is absolutely that. Well, let me, the turnover order, you said you were foreclosed from trying to stop it. You objected to the turnover order, didn't you? We did. You said you had the opportunity to try and stop it. You just weren't successful in trying to stop it. I was not successful, and that's why I'm appearing before your honors. And that's why I'm saying, but in response to Justice Carter's hypothetical, you said, well, legally you're right. Then why are we here? Because we have a conflicting order. We have two orders that are, in my opinion, are in conflict with each other. And I know I'm getting the sense that the justices don't necessarily agree with me. Okay. As my daddy used to say, I wasn't raised as an idiot. Okay. I can listen. I can hear. But I think there's a conflict between the September 12th order and the turnover order. And I think that, again, I think that the order entered on September 12th was a final order. And it granted Margaret 50% of an interest in property. That six months later, there was another order that took it away from her. Well, let me suggest, even though you would like to think it to be a final order, I'm suggesting to you that the law is crystal clear. It was not a final order. But even in response to Justice Carter's hypothetical, with the automobile, even if it were a final order, that raises the legal question, so what? Because, as he said, the bank's got a prior security interest, just as in the vehicle. Even if it were a final order, which it wasn't, it wouldn't change anything because of the bank's security interest. Because the security interest, the order that gave rise to the turnover order, the judgments and the charging orders that First Bank secured only related to William McHenry's property. It did not relate to Margaret McHenry's property. Margaret McHenry was never, other than being a respondent in a citation proceedings, was never party to the case of First Merit Bank v. William McHenry. But it was declared marital property. I'm sorry? It was declared marital property. It was declared marital property, giving Margaret at least, I have to be specific, at least a 50% interest. And I don't think that First Merit had a right to take Margaret's property, given that 50% interest. If it was marital property, why wouldn't the loan used to secure it be marital debt? It would be marital debt. It's absolutely marital debt. But the trial judge, it's not Judge Barrett anymore, we have a new judge, it's going to be Judge Garcia's responsibility to determine who is going to have to pay that marital debt. And I think that's exactly what his turnover order did. I think it was premature. It was Judge Barrett who wrote that order. I think that was premature. Again, essentially because it should have been solely against Mr. McHenry's property, not at least prior to final judgment. It should have been done prior to. It should not have been done prior to the trial of the cost. So if I understand your reasoning in this, you're saying that here the guy has this property, he has this obligation, the bank comes in only against him, and they have a right to try to get a judgment and to enforce their contractual obligations and enforce it against him. So you're saying there's a timing problem because on a day back here, they could have enforced it contractually against all the property that he had. But before they did enforce it here, in between, you ran in and got a temporary order on behalf of your client, representing her, that said in a temporary order, oh, she's got 50% interest in this marital property. So that order, standing alone, prevented them at the subsequent time period from enforcing what they could have enforced here, but they couldn't enforce it now because in between there was the order. That's in essence. That's essentially right. Time's up. Thank you, Your Honors. Thank you. Thank you. Ms. DeLeo. Good morning. Good morning. May it please the Court, Counsel, Amy DeLeo on behalf of Appellee First Merit Bank. Just a couple of points I wanted to discuss with the Court this morning. I think Margaret McHenry's argument on her appeal is based first on a faulty premise, that there was a conflict between the September 12, 2012 order and the order which she appeals from, the March 27, 2013 motion for turnover. The motion for turnover seeks a turnover of the distributions made by the LLCs. That is, the order only discusses these distributions that were paid out by the LLCs. In June of 2010, we did receive a confession of judgment. The promissory notes did have a confession of judgment clause. We got the confession of judgment in July. We served a citation on William McHenry and a third-party citation on Margaret McHenry. Those proceedings are still ongoing. I'm sorry to interrupt you here, but this raises a whole other issue, and I'm wondering, this turnover order finally resolved exactly what? It resolved the issue of, it basically provided that, so what had happened is prior to Mr. McHenry's bankruptcy, we were receiving LLC distributions pursuant to the August 2010 order. So citations were served on the LLCs, I presume? Yes, they were. By First Merit? Yes. And we served a third-party citation on William McHenry. William McHenry disclosed to us that he owned these LLCs, which gave him a right to receive distributions. And we got a charging order pursuant to the LLC Act. And we were receiving those distributions for quite some time, and then when an involuntary bankruptcy was filed against Mr. McHenry, the LLC's concern that they would violate the automatic stay started withholding the distributions and holding onto them until the bankruptcy court or court told them what to do. Okay. Well, I get that part, but I want to be a little more transparent here so you know. I've got some concerns about our jurisdiction here, okay? Okay. And that is what I want to know is the proceedings are still going on between First Merit and Mr. McHenry, right? They're trying to collect more? There's other issues? Yes, yes. And this is all under 1402? These are supplementary proceedings? In other words, you're trying to collect your judgment? Yes. Oh, I don't have the provision in front of me, but I believe under 303 or 304 that you can appeal a final order in a supplementary proceeding? You absolutely can. Okay. And what I'm trying to find out is if this turnover order was indeed a final order. And from the record that is before us, it's kind of hard to determine. And that is what I'm trying to find out. That turnover order was, in fact, a final order. And if it wasn't a final order, put in 304. At least as to some specific claim, 304A language won't make it a final order. And so that's where I'm going with the questions. Well, First Merit does not contest jurisdiction. It doesn't matter. The Supreme Court slaps us around regularly if we don't determine our own jurisdiction. So you can't agree to appellate jurisdiction. We either have it or we don't. And the Supreme Court sometimes not so politely tells us that. And so that's where I'm going. I understand. And I only say that just to explain why it was not addressed in our briefs because we didn't raise a contest. I believe that it is a final order. Unfortunately, I didn't cite the case, and I don't have it in front of me. But looking at the case law, I believe it's a final order because it finally resolves the creditor's, the rights of the party as to this specific piece of property. I believe in a supplementary proceeding, you don't have to resolve all the property issue. As long as there's a decision as to a specific piece of property, that is a final order that is appealable. And so you think the law is, and we just kind of looked at this as the last, we got into this jurisdictional thing at the last, my clerks and I were going over this. And so in a supplementary proceeding under 1402, if you're trying to collect a judgment, every time the judge says, okay, today I'm going to give you this piece of property, the debtor's property, that's appealable with 304A language. And then if there were 20 pieces of property separately divided or separately given to a creditor or not given for that matter, I guess, in a collection proceeding, each one of those could be separately appealable? Yes, I believe so, because with each piece of property, there may be different parties in interest. So I think practically that makes sense. I think that's the case of the law, and I think that makes sense. And 304A does say not just, you know, final results, it's a separate claim. So if it's an individual claim, you may be right. I don't know. I'm trying to figure this out, and that's why I was trying to figure out what exactly is still going on between First Merit and Mr. McEnany or other citation respondents, I suppose. There's currently pending a motion for turnover as to several pieces of property that we haven't been able to come to a resolution otherwise with. So some of the property in this matter, we kind of resolved it through settlement, or there was an agreement. This one, Margaret objected to. She objected to other things as well. So this was one that was resolved. But there are some other pieces of property. We have a pending motion for turnover that's been briefed. It has sort of been entered and continued because we had several new judges. Everybody kept having to recuse themselves this past summer, so we couldn't get a hearing. But also I think the belief among the parties is that, you know, what the court decides here may impact the ruling that will be made on those properties as well, because we are making many of the same arguments. But you can assure me at least as to these citation respondents, these LLCs, this resolves any claims against the LLCs as to First Merit? Yes. With regard to the LLCs listed specifically in the motion for turnover, we list the specific entities that we are talking about because there's many entities that he owns businesses. We list them specifically in the order, and this would fully resolve the rights of First Merit and the rights of the party with regard to those LLCs. Yes. You know, timing is everything on these kinds of claims between people with a variety of interests in the same piece of property. And as I understand it, your claim is that your client had a perfected lien interest in these pieces of property pursuant to the turnover order prior to even the dissolution proceedings starting. Yes, Your Honor. Prior to the order.  Now, if there was a piece of property that before you perfected your lien was transferred to somebody and they were unaware of your interest, you couldn't go after that. I may have a fraudulent transfer claim against them, but absent that. But here the perfected lien occurred prior to even the divorce action itself. Is that right? Correct. We received, yes. And so then the divorce action starts, an order is entered saying she has a 50% interest, but even though that order says she has a 50% interest, you had already perfected your lien on that, on those pieces of property. Correct. On those interests. Yes. And that's why the subsequent order was entered by the judge. Yes. That was the basis of our motion, and that is why the order was entered. And so how would this, just out of curiosity, how would this case impact other liens unless they had very similar fact patterns? I guess it would mean fact patterns. In most of those, with most of the other properties, we're claiming that a lien attached to that property prior to the dissolution proceeding and therefore our lien is superior to her marital interest. And how did the lien attach to these properties? Well, it depends on the property. Some of the properties are shares in corporations, their personal property, therefore they would attach by service of the citation. The LLCs are a little bit different. The Limited Liability Company Act provides that I have to get a charging order for a lien to attach. But with regard to other personal. What's the charging order? The charging order was the August 20, 2010 order. But prior to that, we served a citation on William on July 1, 2010, which pursuant to 1402, attaches a lien to all personal property within his possession and control that belongs to him. And then any third-party citations we served would attach a lien to properties. So the third-party citation to Margaret attached a lien to any property belonging to William in the possession and control of Margaret at that time. And these all predated the 50% ruling? Correct. To Margaret. And predated the filing of the petition for marital dissolution. So with regard to that, we brought up the issue of the tax refund. That is different because the tax refund was issued jointly to Margaret and William. Therefore, Margaret always had an interest, a 50% interest, though I think a creditor would only then have attached a 50% interest to that. You were trading in all of it, though. And we lost. We lost on that argument. I mean, we attempted to make an argument, but ultimately I think we actually reached a settlement with Margaret on that. So, you know, I don't believe there's a substantive conflict between the two orders. One order solely dealt with whether this is marital property under the Marital Dissolution Act, which means it's a part of that universe of property that will be distributed to William and Margaret. Whereas the March 27th order dealt with First Merit's rights and whether First Merit had a valid lien and whether that lien predated Margaret McHenry's marital interest. And the other point I would like to make is that there was nothing in the September 12, 2012 order to bar the March 27th order. Res judicata and law of the case does not apply. It was a non-final, non-appealable order. And I would like to briefly touch on some of the arguments council made in the brief regarding the court's authority to enter the March 27th order. Council suggests that some of the language in the order went beyond what was requested in the motion for turnover. The motion for turnover clearly established, we clearly argued in that motion, that our lien interest was superior to Margaret's marital interest. Therefore, paragraph 2 of the turnover order was clearly contemplated in the motion and was argued by council, was addressed by council in the briefs. Margaret's council was clearly on notice that we were seeking that. And then the paragraphs 4 and 5 that they object to in which Judge Barrett, we were asking Judge Barrett to just reaffirm that we had the liens and the charging orders and that they were valid liens and we added that language to the order. And Judge Barrett was the successor judge to Judge Carney. Judge Carney was, first it was Judge Polito and then Judge Carney, but Judge Barrett was the successor judge and was able to reiterate the prior findings of the court. Therefore, if your honors do not have any further questions, I would just leave the court by asking the court to affirm the trial court's order of March 27, 2013, granting First Merit's motion for turnover. Thank you. Mr. Wacoba, any rebuttal? Under the circumstances, I'll be very brief. I stand on my grace. I still think there was a conflict in the orders. I don't think that the turnover was inappropriate, based upon Margaret's grant being granted at least a 50% interest in mineral property. I will address what my colleague raised on the issue of the order itself. In order for a trial court to grant orders or to make rulings, there has to be a pleading or motion before the court. Nothing in the pleading or motion filed by First Merit to request a turnover asked for all of what we call the extraneous language, the subordination, the reiteration of the charging order. I don't think Judge Barrett had the jurisdiction to enter the orders. The orders should have been simply what was requested. Have you gotten the authority for that statement? Actually, Judge, it's in my brief, Your Honor. I think it's the Ligon case, L-I-G-O-N, the basic that says that while a trial court has vast authority, it only has the authority that's granted to it by way of the motions that are presented to it. And it can only determine a justiciable controversy based upon the pleadings. And there were no pleadings requesting the rulings or the other relief requested by First Merit. And we do address that. I think it's Ligon, L-I-G-O-N. I think that's the name of the case that we set forth in our brief. Beyond that, I thank Your Honors for allowing me to appear today. I enjoyed it. And I ask that the turnover be reversed in advance of this conference. And I thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The Court will now stand in brief recess for a panel of 10. Thank you.